UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JERRY WOJCIK, an individual, on
behalf of himself and all others similarly situated,

      Plaintiff,

v.                         **COMPLAINT - CLASS ACTION**

KUBRA DATA TRANSFER LTD., CORP.,
a New York corporation,

      Defendant.

_____ /

## CLASS ACTION COMPLAINT
### JURY DEMAND

1.     Plaintiff JERRY WOJCIK alleges that Defendant KUBRA DATA TRANSFER LTD., CORP. has illegally pocketed millions of dollars from consumers, businesses, and charities in violation of two separate Florida statutes: Fla Stat. § 501.0117 and Fla. Stat. § 560.204.  As further explained herein, Plaintiff asserts that Defendant's actions are unconscionable, criminal, and the direct cause of financial damages to Floridians.  On behalf of the putative class and subclass, Plaintiff seeks to recover all monies unlawfully collected by Defendant.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (i) at least one member of the putative class is a citizen of a state different from Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and (iii) none of the exceptions under that section apply to this action.

3.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here.  Defendant does business in this District and its contacts here are sufficient to subject it to personal jurisdiction.

## PARTIES

4.    Plaintiff, JERRY WOJCIK ("Plaintiff" or "Mr. Wojcik"), is a natural person, and citizen of the State of Florida, residing in Pinellas County, Florida.

5.    Defendant KUBRA DATA TRANSFER LTD., CORP. ("Kubra") is a funds transmission service and bill payment processing company incorporated in New York and principally located in Edison, New Jersey.  Kubra provides electronic bill payment processing services for several industries, including utility companies such as Duke Energy Florida.

6.    Kubra is a "Money Transmitter" as defined by Fla. Stat. § 560.103(23), as Kubra receives currency, monetary value, and payment instruments for the purpose of transmitting the same through bill payment services within this country, and to and from this country.

## STATUTORY BACKGROUND OF FLA. STAT. § 501.0117

7.    In 1987, the Florida legislature enacted Fla. Stat. § 501.0117, which unequivocally prohibits businesses from imposing a surcharge against those consumers and businesses who choose to purchase goods or services with a credit card.

8.    The relevant portion of the aforementioned statute reads as follows:

2

> **A seller or lessor in a sales or lease transaction may not impose a surcharge on the buyer or lessee for electing to use a credit card in lieu of payment by cash, check, or similar means, if the seller or lessor accepts payment by credit card. A surcharge is any additional amount imposed at the time of a sale or lease transaction by the seller or lessor that increases the charge to the buyer or lessee for the privilege of using a credit card to make payment…**

9. Moreover, it is a misdemeanor of the second degree for any person convicted of violating Fla. Stat. § 501.0117.

10. In February 2007, the State Attorney for the Sixteenth Judicial Circuit of Florida requested an advisory opinion from the Florida Attorney General regarding the legality of a credit card surcharge being imposed by Keys Energy Services, a local electric cooperative servicing those in an around the city of Key West, Florida. A copy of the request is attached hereto as **Exhibit A**.

11. Shortly thereafter, in March 2007, the City of Ocala made a similar request for an advisory opinion regarding the legality of a credit card surcharge imposed by the City of Ocala Electric Utility.  A copy of the request is attached hereto as **Exhibit B**.

12. On June 12, 2007, Florida Attorney General Bill McCollum answered those inquiries and made clear that both programs were in compliance with the law, as Fla. Stat. § 501.0117 does not apply to *municipal* utilities.  However, Attorney General McCollum also stated that the statute "would, however, appear to prohibit *private* utilities from imposing a surcharge for use of a credit card for payments." *See* **Exhibit C** (emphasis added).

13. Recently, the statute has been challenged on First Amendment grounds as being unconstitutional. That effort, however, was unsuccessful and in a cleverly worded opinion, Judge Robert L. Hinkle of the Northern District of Florida explained, "[t]his statute is no more a First Amendment violation than are the Truth in Lending Act, which restricts how a lender can pitch its interest rates, and the Fair Debt Collection Practices Act, which restricts how a creditor can present its claim for repayment." *Dana's Railroad Supply v. Bondi*, Case No. 4:14-cv-134-RH/CAS (N.D. Fla. Sept. 2, 2014).

**STATUTORY BACKGROUND OF FLA. STAT. § 560.204**

14. Fla. Stat. Ch. 560 regulates the activity of "Money Services Businesses" in the State of Florida, including "Money Transmitters" such as the Defendant.

15. A "Money Transmitter" is "a corporation, limited liability company, limited liability partnership, or foreign entity qualified to do business in this state which receives currency, monetary value, or payment instruments for the purpose of transmitting the same by any means, including transmission by wire, facsimile, electronic transfer, courier, the Internet, or through bill payment services or other businesses that facilitate such transfer within this country, or to or from this country." Fla. Stat. § 560.103(23).

16. Fla. Stat. § 560.204(1) states that, unless exempted, "a person may not engage in, or in any manner advertise that they engage in, the selling or issuing of payment instruments or in the activity of a money transmitter, for compensation, without

4

first obtaining a license under this part. For purposes of this section, 'compensation' includes profit or loss on the exchange of currency."

17.     Florida imposes considerable requirements on money transmitters seeking a license, including proof of minimum net worth of up to $2 million, a surety bond of up to $2 million, annual financial audit reports, significant record keeping requirements, and other conditions.  Fla. Stat. § 560.203 *et seq.*

18.     Similarly, federal law requires money transmitting businesses such as Kubra to obtain a license within the state, and to register themselves with the United States Department of the Treasury.  *See* 18 U.S.C. § 1960 and 31 U.S.C. § 5330.

19.     Despite these requirements, Kubra conducts a large-scale money transmitter business without a Florida license.

20.     Indeed, Kubra does not appear to be licensed in *any* jurisdiction, and does not comply with federal law requiring licensure and registration of money transmitting businesses.  *See* 18 U.S.C. § 1960 and 31 U.S.C. § 5330.

**FACTUAL ALLEGATIONS AS TO PLAINTIFF WOJCIK**

21.     Plaintiff Wojcik lives in a residence in Pinellas County, Florida, with electric utility services supplied by Duke Energy Florida.

22.     On or about October 25, 2014, Plaintiff paid his monthly electric bill to Duke Energy Florida using Defendant Kubra's "EZ-Pay" service, a hyperlink to which appears on Duke Energy Florida's bill payment webpage.

23.     Plaintiff made this payment using his personal Discover® credit card.

24.    At the time of payment, Defendant imposed upon Plaintiff an additional surcharge of $2.40 for the privilege of making payment using a credit card.

**FACTUAL ALLEGATIONS AS TO DUKE ENERGY FLORIDA**

25.    Duke Energy Florida is an electric utility company that provides electricity to over 1.5 million Florida customers, including over 1.4 million residential customers and over 160,000 commercial customers.[1]

26.    Duke Energy Florida relies upon Defendant Kubra to process credit card payments made by its customers, and to transmit the money it obtains back to Duke Energy Florida.

27.    Defendant Kubra imposes a surcharge upon customers of Duke Energy Florida for the privilege of making a payment using a credit card.  This surcharge is $2.40 for residential customers, and $9.95 for commercial customers.

28.    It is widely estimated that over 10% of bill payers make payments electronically using a credit or debit card.[2]

29.    Accordingly, the amount in controversy in this case exceeds $5,000,000, exclusive of costs and interest, as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

---

[1]    Florida Public Service Commission, *Facts and Figures of the Florida Utility Industry*, http://www.publicpower.com/pdf/stats/PSCgeneral-factsandfigures2013.pdf (2013).
[2]    Kathy Plymouth and Jody Martin, First Data Corporation, *Bill Payment Trends: Major Shifts in Consumer Behavior Require Comprehensive Planning*, http://www.firstdata.com/downloads/thought-leadership/fd_billpaymenttrends_whitepaper.pdf (2009).

## CLASS ALLEGATIONS

30.    This action is brought on behalf of a class and two subclasses defined as follows:

### Class

(i) all persons in Florida (ii) who paid money to Kubra (iii) where Kubra was to transmit said money to another person (iv) and where Kubra imposed a fee for such service (v) during the four year period prior to the filing of the complaint in this action through the date of certification.

### FDUTPA Subclass

(i) all consumers in Florida (ii) who paid money to Kubra (iii) using a credit card (iv) through Kubra's bill payment service (v) and who were charged a surcharge for such payment (vi) during the four year period prior to the filing of the complaint in this action through the date of certification.

### Duke Energy Florida Subclass

(i) all persons in Florida (ii) who made a bill payment to Duke Energy Florida (iii) using a credit card (iv) through Kubra's bill payment service (v) and who were charged a surcharge for such payment (vi) during the four year period prior to the filing of the complaint in this action through the date of certification.

31.    Plaintiff alleges on information and belief that the class is so numerous that joinder of all members of the class is impractical.

32.    There are questions of law or fact common to the class, which common issues predominate over any issues involving only individual class members.   The common factual and/or legal issues common to each class member are as follows:

(a)    Whether Defendant is a "Money Transmitter" as defined by Fla. Stat. § 560.103(23)?

7

     (b)     Whether Defendant is required to obtain a license as a "Money Transmitter" per Fla. Stat. § 560.204?

     (c)     Whether Defendant's credit card surcharges are unlawful under Fla. Stat. § 501.0117?

     (d)     Whether Defendant should be enjoined from engaging in such conduct in the future?

33. Plaintiff's claim is typical of those of the class members. All claims are based on the same facts and legal theories.

34. Plaintiff will fairly and adequately protect the interests of the class. He has retained counsel experienced in handling actions involving unlawful anti-consumer practices. Neither Plaintiff nor his counsel has any interests that might cause them not to vigorously pursue this action.

35. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

     a.  The questions of law or fact common to the members of the class predominate over any questions affecting an individual member.

     b.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

36. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendant has acted on grounds generally applicable to the class thereby making appropriate relief with respect to the class

as a whole. Injunctive relief is appropriate and necessary to cause the illegal telemarketing to stop.

37.     Plaintiff requests certification of a hybrid class pursuant to both Rule 23(b)(3), for monetary damages and Rule 23(b)(2) for injunctive relief.

**COUNT I**
**UNJUST ENRICHMENT FOR VIOLATION OF FLA. STAT. § 501.0117**

38.     Plaintiff incorporates all previous Paragraphs.

39.     Members of the putative Duke Energy Florida Subclass conferred a benefit on Defendant, to wit: payment of an unlawful surcharge for the privilege of making a bill payment via credit card to Duke Energy Florida.

40.     Defendant had knowledge of the benefit, in that the Defendant itself collected the unlawful surcharge.

41.     Defendant accepted and retained the benefit conferred, i.e., the unlawful surcharge.

42.     The circumstances are such that it would be inequitable for the Defendant to retain the benefit of the unlawful surcharge without paying fair value for it, as credit card surcharges are prohibited in Florida under Fla. Stat. § 501.0117.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the Duke Energy Florida Subclass, against Defendant KUBRA DATA TRANSFER LTD., CORP., for:

(a)     An order certifying this case to proceed as a class action;

(b)     An order directing Defendant to disgorge their ill-gotten monies from the putative Duke Energy Florida Subclass;

9

    (c)     Reasonable attorney's fees and costs; and

    (d)     Such further relief as this Court may deem appropriate.

## COUNT II
## MONEY HAD AND RECEIVED FOR VIOLATION OF FLA. STAT. § 501.0117

43.    Plaintiff incorporates all previous Paragraphs.

44.    Defendant has received money from the putative Duke Energy Florida Subclass.

45.    Defendant received this money as a result of unlawful surcharges imposed by Defendant on the putative Duke Energy Florida Subclass members' transactions.

46.    The circumstances are such that Defendant should, in all fairness, be required to return the money to the putative Duke Energy Florida Subclass.

    WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendant KUBRA DATA TRANSFER LTD., CORP., for:

    (a)     An order certifying this case to proceed as a class action;

    (b)     Actual damages in the amount of the unlawful surcharges illegally obtained by the Defendant from the Duke Energy Florida Subclass;

    (c)     Reasonable attorney's fees and costs; and

    (d)     Such further relief as this Court may deem appropriate.

## COUNT III
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICE ACT
## FOR VIOLATIONS OF FLA. STAT. § 501.0117

47.    Plaintiff incorporates all previous Paragraphs.

48.    Defendant committed an unfair practice by charging a surcharge on credit card transactions in violation of Fla. Stat. § 501.0117.

49.     This practice caused actual damages to the putative FDUTPA subclass members in that they paid additional sums of money to Defendant for the privilege of making a payment via credit card.

50.     The putative FDUTPA subclass members incurred actual damages in the form of unlawful surcharges paid by them and unlawfully collected by the Defendant.

        WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendant KUBRA DATA TRANSFER LTD., CORP., for:

      (a)     An order certifying this case to proceed as a class action;

      (b)     An injunction prohibiting further violations of Fla. Stat. § 501.0117;

      (c)     Reasonable attorney's fees and costs; and

      (d)     Such further relief as this Court may deem appropriate.

**COUNT IV**
**UNJUST ENRICHMENT FOR VIOLATION OF FLA. STAT. § 560.204**

51.     Plaintiff incorporates all previous Paragraphs.

52.     Members of the putative class conferred a benefit on Defendant, to wit: payment of compensation to Defendant in exchange for money transmission services.

53.     Defendant had knowledge of the benefit, in that the Defendant itself collected its fee from the putative class members.

54.     Defendant accepted and retained the benefit conferred.

55.     The circumstances are such that it would be inequitable for the Defendant to retain its compensation, as Defendant was not a licensed money transmitter as required by Fla. Stat. § 560.203.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendant KUBRA DATA TRANSFER LTD., CORP., for:

> (a)    An order certifying this case to proceed as a class action;
>
> (b)    An order directing Defendant to disgorge their ill-gotten monies from the putative class;
>
> (c)    Reasonable attorney's fees and costs; and
>
> (d)    Such further relief as this Court may deem appropriate.

**COUNT V**
**MONEY HAD AND RECEIVED FOR VIOLATION OF FLA. STAT. § 560.204**

56.    Plaintiff incorporates all previous Paragraphs.

57.    Defendant has received money from the putative class.

58.    Defendant received this money as a result of compensation payments made by the putative class members in exchange for money transmission services.

59.    The circumstances are such that Defendant should, in all fairness, be required to return the money to the putative class, as Defendant was not a licensed money transmitter as required by Fla. Stat. § 560.203.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendant KUBRA DATA TRANSFER LTD., CORP., for:

> (a)    An order certifying this case to proceed as a class action;
>
> (b)    Actual damages in the amount of the unlawful surcharges illegally obtained by the Defendant;
>
> (c)    Reasonable attorney's fees and costs; and
>
> (d)    Such further relief as this Court may deem appropriate.

## COUNT VI
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICE ACT
## FOR VIOLATIONS OF FLA. STAT. § 560.204

60.     Plaintiff incorporates all previous Paragraphs.

61.     Defendant committed an unfair practice by conducting business as a money transmission service for compensation without obtaining a license as required by Fla. Stat. § 560.204.

62.     This practice caused actual damages to the putative FDUTPA subclass members in that they paid additional sums of money to Defendant for money transmission services, where Defendant's acceptance of these payments was prohibited by law.

63.     The putative FDUTPA subclass members incurred actual damages in the form of unlawful fees paid by them and unlawfully collected by the Defendant.

        WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendant KUBRA DATA TRANSFER LTD., CORP., for:

        (a)     An order certifying this case to proceed as a class action;

        (b)     An injunction prohibiting further violations of Fla. Stat. § 560.204;

        (c)     Reasonable attorney's fees and costs; and

        (d)     Such further relief as this Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully, submitted this 11th day of February 2015.

BRET L. LUSSKIN, Esq.                    SCOTT D. OWENS, Esq.
*Attorney for Plaintiff*                 *Attorney for Plaintiff*
20803 Biscayne Blvd., Ste 302            3800 S. Ocean Dr., Suite 235
Aventura, FL 33180                       Hollywood, Florida 33019

13

Telephone: (954) 454-5841            Telephone:  954-589-0588
Facsimile: (954) 454-5844            Facsimile:  954-337-0666
blusskin@lusskinlaw.com              scott@scottdowens.com

By:    /s/ Bret L. Lusskin, Esq.     By:    /s/ Scott D. Owens, Esq.
       Florida Bar No. 28069                Scott D. Owens, Esq.
       Bret L. Lusskin, Esq.                Florida Bar No. 0597651


JAMES GIARDINA, Esq.
*Trial Counsel for Plaintiff*
The Consumer Rights Law Group, PLLC
3104 West Waters Avenue, Suite 200
Tampa, Florida 33614
Direct: (813) 413-5610
Fax: (866) 535-7199
james@ConsumerRightsLawGroup.com

By:    /s/ James Giardina, Esq.
       Florida Bar No. 942421
       James Giardina, Esq.